JOURNAL ENTRY AND OPINION
{¶ 1} This cause came on to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1, the trial court records and briefs of counsel.
 {¶ 2} Defendant-appellant James Allen Hornack ("Hornack"; d.o.b. September 10, 1959), appeals on the accelerated docket from the trial court classifying him as being a sexual predator.[1] For the reasons adduced below, we affirm.
 {¶ 3} A review of the record on appeal indicates that Hornack was indicted on May 9, 2001, on the following offenses involving his daughter over a two-year period of time while the daughter was between eight to ten years of age: (1) five counts of rape, in violation of R.C. 2907.02; (2) five counts of gross sexual imposition, in violation of R.C. 2907.05; (3) one count of disseminating matter harmful to juveniles, in violation of R.C. 2907.31; (4) nine counts of pandering sexually-oriented matter involving a minor, in violation of R.C. 2907.322; (5) three counts of endangering children, in violation of R.C. 2929.22; and, (6) one count of possession of criminal tools (a digital camera and disks), in violation of R.C. 2923.24.
 {¶ 4} Hornack pled not guilty at his 2001 arraignment.
 {¶ 5} On January 11, 2002, Hornack withdrew his plea of not guilty and entered a guilty plea to the following: (1) one count of rape as amended in count one; (2) one count of gross sexual imposition as charged in count seven; (3) one count of disseminating matter harmful to juveniles as charged in count eleven; and, (4) one count of pandering sexually-oriented material involving a minor as charged in count fifteen. The remaining counts were nolled. This plea was journalized on January 23, 2002. Sentencing hearing was scheduled for February 21, 2002, at 10:00 a.m.
 {¶ 6} Hornack filed a sentencing memorandum and supplemental presentence report on February 21, 2001, at 8:59 a.m. In addition to citing to the relevant sentencing criterial and law, this filing contained copies of lengthy letters from two of Hornack's friends, who urged mercy for Hornack, and documents which indicated that Hornack graduated in 1981 from the United States Military Academy at West Point, New York, with a degree in engineering.[2] The memorandum, and the attached letters, also indicated that Hornack, who had no prior involvement with the criminal justice system, had served in the United States Army as an officer in Airborne, Rangers, and ultimately as a Captain in Special Forces, a unit more commonly known as "Green Berets." According to the January 24, 2002 presentence investigation report, Hornack was honorably discharged in 1987.
 {¶ 7} The court conducted the sentencing hearing as scheduled. At the hearing, the prosecution offered the live testimony of one witness, Detective Robert Surgenor. This witness testified that, as a computer analyst for the Cuyahoga County Sheriff's Office, he examined Hornack's desktop and laptop computers, which had been seized by the police. On the hard drives of these computers, the witness found, in total, "a couple of hundred" sexually-explicit photographic images of child pornography. Tr. 10. Approximately 125 of those images were received by Hornack as attachments to email messages. Tr. 11. Among these photographs were some images of his daughter in sexual poses or otherwise nude.
 {¶ 8} The prosecution, over the objection of the defense, also offered the transcript of the statement taken on June 1, 2001 from then twelve-year-old Master B.L.P. by Pennsylvania State Police Trooper Brian Mason. See State Exhibit 2. This statement was subsequently provided to the Parma Police Department during their investigation of Hornack. In this statement, the juvenile indicated that he had first met Hornack near Hornack's summer cottage in Pennsylvania. The juvenile claimed that Hornack had showed him a Playboy magazine, adult movies on the Playboy Channel on cable television and adult movie audiotapes. A particular videotape depicted scenes involving vaginal intercourse and oral sex. He also accused Hornack of having purchased cigarettes, pipe tobacco, and alcoholic beverages for the youth. The juvenile next stated that Hornack visited sexually-related chat rooms on the internet while the juvenile watched. While on the computer in the boy's presence, the young man stated that Hornack, at times, masturbated himself, and permitted the juvenile to masturbate; the two did not touch one another. The juvenile next claimed that Hornack took photographs of the juvenile using a digital camera while the juvenile had his shirt off and pants on, published one such image on the internet, and offered to take a nude photograph of the boy if the boy desired this to be done. There is no indication that any nude photographs of this juvenile were ever made or published.
 {¶ 9} The defense presented the testimony of one witness at the hearing, clinical psychologist John M. Fabian, Ph.D., who had been in practice for approximately two years at that time with the Lake County Common Pleas Court and in private practice in northeastern Ohio. Fabian testified that, in addition to being in his third year of law school at Cleveland Marshall College of Law, he has made professional assessments in approximately 100 sexual predator/offender cases, including Hornack's. Tr. 19-20. Fabian further testified that he saw Hornack on January 19 and 24, 2002, for approximately four hours total. As part of his efforts, Fabian interviewed Hornack and also spoke with Hornack's mother and counsel for the state and defense.
 {¶ 10} During his evaluation, Fabian administered a number of tests on Hornack.
 {¶ 11} The Minnesota Multiphasic Personality Inventory, a.k.a. MMPI-2, which is used, according to Fabian, to assess psychological and emotional functioning, disclosed "some anxiety and some health concerns" but "no significant mental illness." Tr. 23. The MMPI-2 did not show an elevated "risk of a future offending." Tr. 23.
 {¶ 12} The Hare Psychopathy Checklist Revised, which is, according to Fabian, "an instrument measuring severe criminal personality or psychopathy or sociopathy," disclosed that Hornack could not be labeled as a psychopathic personality, scoring in the 5th percentile amongst incarcerated offenders at the time of the test taking. Tr. 24.
 {¶ 13} On the SVR 20, which entails numerous factors to help determine an offender's risk of sexually reoffending, Fabian assessed Hornack as having a score of 16 out of a possible 40. Tr. 29-30. According to Fabian, this score indicated a moderate to low risk of sexually reoffending. Tr. 30.
 {¶ 14} Based on his evaluation, Fabian diagnosed Hornack as suffering from "pedophilia, non-exclusive type sexually attracted to females." Tr. 25. Fabian testified that "pedophilia indicates sexual deviancy and we are concerned about the defendant's risk for future sex offending behavior." Tr. 27. Fabian explained:
 {¶ 15} "What that means is that over a period of at least six months, the defendant engaged in sexual thoughts, behaviors, urges, that impaired social occupational functioning, in a sense, living, and these thoughts, behaviors, involved female children, his daughter, usually the age range is 13 or younger. And his daughter would fit that criteria.
 {¶ 16} "Non-exclusive type means the defendant if he was only interested in females, which is not — children, which is not the case here, he would be exclusively attracted to children. Non-exclusive means that he has had peer relationships, he's been married." Tr. 25.
 {¶ 17} Fabian indicated that Hornack has an adjustment disorder, with anxiety and depression, that was exacerbated by the criminal court situation. Tr. 26.
 {¶ 18} During his evaluation, Fabian utilized actuarial data in the professional research to help determine Hornack's risk of sexually reoffending. Tr. 27. In this regard, Fabian's report indicates that he applied a Static-99 test. See Fabian's report at 8. Based on this actuarial data, Fabian concluded that "he had a low risk, six percent of the individuals scored similarly reoffended after seven percent after 15 years, seven percent after 15 years * * *. * * * what that means is that 7 percent reoffended after 15 years of the people that were in this study that were followed. But this is based on reconviction, not reoffense, orrecharge, or reallegations." (Italicization added.) Tr. 28. In his report, Fabian indicated that the Static-99 results indicated a "low to moderate risk of future sexual violence." Fabian's report at 9.
 {¶ 19} Furthermore, when asked by the defense to relate his impressions concerning Hornack to the ten factors contained in R.C.2950.09(B)(3)(a)-(j) which would be applicable, Fabian addressed the following applicable factors: (1) with regard to Hornack's age of 36, it would be a non-factor indicative of a low risk of sexually reoffending (see R.C. 2950.09[B][3][a]); (2) the age of the victim indicated an elevated risk of sexually reoffending (see R.C. 2950.09[B][3][c]); (3) Hornack exhibited mental illness or disability by suffering from pedophilia, non-exclusive type, sexually attracted to females (see R.C.2950.09[B][3][g])[3]; (4) the acts toward the victim would be assumed to be a display of cruelty toward the victim (see R.C. 2950.09[B][3][I]); (5) under "any additional behavior," the "inadequate personality disorder as well as the allegation of another type sex offense or act in Pennsylvania with a male is an issue to consider for the court," (see R.C. 2950.09[B][3][j]). Tr. 33.
 {¶ 20} Based on his observations, Fabian opined that Hornack exhibited a moderate to low risk of sexually reoffending, stating:
 {¶ 21} "Well, I believe that factors indicating elevated risk are the diversity of sexual acts with the victim, which would indicate pedophilia, use of pornography, in a sense some obsessive behaviors with pornography, some child pornography that the defendant admitted to.
 {¶ 22} "Mixed personality disorder, possible male victim but I cannot call that as a formal charge or conviction.
 {¶ 23} "Factors lowering his risk, which are very important to consider, are no prior sex offenses, or violent offenses, no multiple victims and no stranger victims.
 {¶ 24} "I have no evidence of antisocial personality disorder, and — or psychopathy. When those two elements were combined with pedophilia, risk is considerably higher. That is not the case here.
 {¶ 25} "He was also married, and he was in an older age, again, did not start offending at a young age.
 {¶ 26} "Has no documented male victims that I can speak of. And overall, I believe, actuarially he was low. And clinically, in my opinion, with the factors I laid out, he would be moderate to low. And itwould be difficult for me to say at this point that he would be likely toreoffend. I think lack of a prior offense is significant with that, as well as a lack of a stranger victim. Those are two factor (sic) that are important here." (Italicization added.) Tr. 33-34.
 {¶ 27} Finally, Fabian recommended on direct examination that Hornack, whether incarcerated or given probation, receive treatment in a relapse prevention program for his pedophilia disorder. Tr. 34-35.
 {¶ 28} On cross-examination, Fabian testified that while relapse treatment is of low significance in reducing the risk of reoffending and has some purpose, "there is a statistically significant lower risk [of reoffending] amongst individuals who have been treated in a relapse prevention type treatment, * * *." [Explanation added.] Tr. 37-38.
 {¶ 29} Fabian next testified that Hornack had told him that he had 20 to 30 child pornography images on his computer, and that Fabian's opinion on reoffending would change significantly if he were to learn that the offender's computer actually had hundreds of such pornographic images. Tr. 38.
 {¶ 30} Fabian also stated that he believed that Hornack was not being totally honest with himself or Fabian concerning Hornack's motivation in molesting his child, taking sexually-explicit photographs of her, or the extent of his photography with her. Tr. 39-42.
 {¶ 31} Fabian next stated that the presence of a male victim in Pennsylvania, if true, would increase the Static-99 score and the SVR 20 score. Tr. 43-44. Hornack's age would indicate a low risk of reoffending while he was incarcerated, but Fabian agreed that Hornack would have a long potential history of reoffending after being released from prison. Tr. 45. Hornack's risk of reoffending would also be elevated if Hornack used alcohol or drugs with the boy in Pennsylvania over a period of time in order to facilitate sexual acts with the boy. Tr. 46. Fabian then stated that treatment success will be negatively impacted if Hornack continues to be in denial and denies the allegations. Tr. 47.
 {¶ 32} On redirect examination, Fabian testified that he was aware of the Pennsylvania allegations when he assessed Hornack and, despite these Pennsylvania allegations, Hornack represents a moderate to low risk of reoffending. Tr. 48-49.
 {¶ 33} On February 21, 2002, subsequent to the oral hearing in open court with counsel and Hornack present, the trial court sentenced Hornack to the following: (1) 8 years on count one, to run concurrent with the sentences on counts seven and fifteen; (2) 3 years on count seven, to run concurrent with the sentences on counts one and fifteen; (3) 12 months on count eleven, to run concurrent with the sentences on counts one, seven, and fifteen; (4) 6 years on count fifteen, to run concurrent with the sentences on counts one and seven; (5) post-release control; (6) Hornack to pay costs; (7) Hornack adjudicated to be a sexual predator. Effectively, Hornack received a prison term of 9 years.
 {¶ 34} The court stated the following reasoning in adjudicating Hornack to be a sexual predator:
 {¶ 35} "I've had an opportunity to review the presentence investigation report, as well as the presentence investigation report that has been prepared and submitted by Mr. Hornack, along with, I believe which is marked as Defendant's Exhibit A, which is the report prepared by the — by Dr. Fabian, the psychologist on the defendant's behalf. And I've now had an opportunity to review State v. Winchester
which was provided to the court by Mr. Kersey, which is an Eighth District Court of Appeals decision, Eighth District Court of Appeals No. 78019 which was decided August 6th, 2001. Bases its ruling on a great deal on holding that preceded it. State v. Eppinger.
 {¶ 36} "In reviewing the criteria set out in Revised Code 2950.09, I find that the under A, I find that the offender's age does in fact as Dr. Fabian indicated, his age is an indicator that he would be less likely to reoffend than somebody who is under the age of 25 years.
 {¶ 37} "I find the offender has no prior criminal record under Division (b).
 {¶ 38} "Under (c), age of the victim in this instance, obviously is an indicator the offender is likely to reoffend. We are dealing with a victim ranging in ages, according to Dr. Fabian's report, from 5 to 11 years of age.
 {¶ 39} "Under (d), sexually oriented offense, for sentencing involves multiple victims, this one does not involve a multiple — does not involve multiple victims, but I think the record needs to reflect that you are dealing with multiple offenses committed against the same victim over a significant period of time.
 {¶ 40} "Obviously, no allegation Mr. Hornack used drugs or alcohol to impair the victim in order to get the victim to go along with sexually oriented acts. However, in this particular instance, it was his parental relationship with this particular victim that put him in a position to get her to go along without the need to resort to either physical force, drugs, or other — or alcohol.
 {¶ 41} "Mr. Hornack is an offender who according to Dr. Fabian does suffer from pedophilia, obviously that is an indicator that he could potentially reoffend. During the course of these sexually oriented offenses, he did — there is evidence of cruelty given the age of the victim and his relationship to the victim, and the fact that indeed serious physical harm in this instance, that harm being the victims need for long-term psychiatric treatment being caused.
 {¶ 42} "That being the case I find that the evidence is sufficient by clear and convincing evidence that Mr. Hornack is likely to reoffend. I believe that that evidence is sufficient, mainly, is evidenced by Mr. Hornack's continued sexual behavior towards the victim in this case. Were there one, two or even three instances of conduct, where Mr. Hornack then recognized his problem and took adequate steps or at least took some steps to alleviate his problem, that would be different.
 {¶ 43} "In this instance, we are dealing with multiple offenses committed against the same victim over a significant period of time.
 {¶ 44} "Mr. Hornack then evidenced his minimization of the seriousness of those acts by photographing his daughter and publishing those photographs for others to see. Mr. Hornack in his mind did not even view these acts as acts for which he should be ashamed. These were acts he readily shared with whomever wished to view them over however many numerous chat rooms he was dealing with over that period of time.
 {¶ 45} "The case, State v. Winchester that was cited by the defense in which does relate to State v. Eppinger, does set out a number of factors, the main factor cited by, I believe Judge Kilbane, who wrote the opinion of the court was this offense was an isolated instance and not part of a demonstrated pattern of abuse, page 96 of this opinion.
 {¶ 46} "In this instance this wasn't an isolated instance, this was part of a long-term pattern of abuse. And it is that factor that gives the court the greatest amount of pause and in my opinion shows the greatest amount of evidence that Mr. Hornack poses a serious threat to reoffend in the future upon his release from prison. So I find by clear and convincing evidence Mr. Hornack is a sexual predator."
 {¶ 47} This appeal originally presented two assignments of error, each attacking the sexual predator determination.
 {¶ 48} The first assignment states: "The Evidence Before the Trial Court Was Insufficient, as a Matter of Law, to Prove by Clear and Convincing Evidence That Defendant `Is Likely to Engage in the Future in One or More Sexually Oriented Offenses.'" Appellant's brief at 4.
 {¶ 49} The second assignment states: "The Trial Court's Determination That Defendant `Is Likely to Engage in the Future in One or More Sexually Oriented Offenses' Was against the Manifest Weight of the Evidence." Appellant's brief at 4.
 {¶ 50} The argument section of appellant's brief does not distinguish between the two assignments, in effect combining them for purposes of appeal. Despite this minor annoyance, we note that the thrust of appellant's argument is that the evidence could not support the trial court's determination by clear and convincing evidence that appellant posed a risk of sexually reoffending in the future.
 {¶ 51} In State v. Smith (Nov. 21, 2001), Cuyahoga App. No. 78823, this court stated the following with regard to an assignment arguing that there was insufficient evidence to demonstrate that the offender was a clear and convincing risk of reoffending:
 {¶ 52} "This court held in State v. Vintson, 144 Ohio App.3d 339,2001 Ohio App. LEXIS 2525, 760 N.E.2d 51 (2001) that:
 {¶ 53} `In its most recent pronouncement dealing with sexual predator determinations, the Ohio Supreme Court stated the following:
 {¶ 54} `* * * in order for the offender to be designated a sexual predator, the state must prove by clear and convincing evidence that the offender has been convicted of a sexually oriented offense and that the offender is likely to engage in the future in one or more sexually oriented offenses. R.C. 2950.01(E) and 2950.09(B)(3).
 {¶ 55} `The General Assembly supplied the trial court with several factors to consider in making this weighty decision. R.C.2950.09(B)(2) provides:
 {¶ 56} `In making a determination * * * as to whether an offender is a sexual predator, [*9] the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 57} `(a) The offender's age;
 {¶ 58} `(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 59} `(c)) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 {¶ 60} `(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 {¶ 61} `(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 62} `(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 {¶ 63} `(g) Any mental illness or mental disability of the offender;
 {¶ 64} `(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in [*10] a sexual context was part of a demonstrated pattern of abuse;
 {¶ 65} `(I) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 {¶ 66} `(j) Any additional behavioral characteristics that contribute to the offender's conduct.'
 {¶ 67} "In State v. Eppinger (2001), 91 Ohio St.3d 158,743 N.E.2d 881, the Supreme Court considered the standard of clear and convincing evidence as applied to sexual predator hearings. The court stated that clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal. Eppinger citing to Crossv. Ledford (1954), 161 Ohio St. 469, 477, 53 Ohio Op. 361, 120 N.E.2d 118."
 {¶ 68} Viewing the evidence presented to the court, we note that the Static-99 test results are of practically no worth in predicting the risk of sexual recidivism. As stated by the majority very recently inState v. Ellison (Aug. 8, 2002), Cuyahoga App. No. 78256, 2002-Ohio-4024, at ¶ 9:
 {¶ 69} "The court was not obligated to give the psychological report any great weight. The utility of the STATIC-99 evaluation as a diagnostic tool for individual risk assessment is open to question. The evaluation merely performs an actuarial assessment of an offender's chances of reoffending. See State v. Colpetzer, Cuyahoga App. No. 79983, 2002-Ohio-967. While actuarial risk assessments are said to outperform clinical risk assessments, actuarial assessments do not, and cannot,purport to make a prediction of a particular offender's future conduct. In fact, the use of an actuarial assessment could arguably be at odds with Ohio's statutory scheme. R.C. 2950.01(E) and R.C. 2950.09(B) require a determination that the offender is likely to engage in the future in one or more sexually-oriented offenses. This is an individualized determination for a particular offender. The STATIC-99 cannot purport to make an individualized assessment of future conduct any more than a life expectancy table can provide an accurate prediction of a particular individual's longevity." (Italicization added.)
 {¶ 70} That Hornack tested within the normal rage on the MMPI-2 test is likewise of little note. As further recognized by the majority inState v. Ellison, supra, 2002-Ohio-4024, at ¶ 10-17, the high risk of recidivism with pedophile sex offenders "dispels any notion that they can be considered `normal' in a sense understood by the public":
 {¶ 71} "That Ellison tested within normal limits on an MMPI-2 evaluation is likewise not particularly noteworthy. Studies suggest that many sexual offenders test within `normal' limits. See, e.g., Baker, Once A Rapist? Motivational Evidence and Relevancy In Rape Law (1997), 110 Harv.L.Rev. 563, 576-578 (reviewing data regarding the `normality' of rapists). If pedophiles can be classified as `normal' it might be time to question just what the term `normal' means.
 {¶ 72} "The MMPI result finding Ellison within the `normal' range appears to be undercut in large part by various data relating to the recidivism rate among sexual offenders. When considering the Jacob Wetterling Crimes Against Children Registration Act, Section 14701, Title 42, U.S. Code, the House Report prepared for the Act stated that:
 {¶ 73} `Evidence suggests that child sex offenders are generally serial offenders. Indeed, one recent study concluded the "behavior is highly repetitive, to the point of compulsion," and found that 74% of imprisoned child sex offenders had one or more prior convictions for a sexual offense against a child.' See H.R. Rep. No. 392, 103d Congress (1993).
 {¶ 74} "In State v. Eppinger (2001), 91 Ohio St.3d 158, 159-162,743 N.E.2d 881, the Supreme Court also recognized the increased risk of recidivism for pedophiles:
 {¶ 75} `Although Ohio's version, R.C. Chapter 2950, does not differentiate between crimes against children and crimes against adults, recidivism among pedophile offenders is highest. Some studies have estimated the rate of recidivism as being as high as fifty-two percent for rapists and seventy-two percent for child molesters. Comparet-Cassani, A Primer on the Civil Trial of a Sexually ViolentPredator (2000), 37 San Diego L.Rev. 1057, 1071, citing Prentky,Recidivism Rates Among Child Molesters and Rapists: A MethodologicalAnalysis (1997), 21 Law Human Behavior 635, 651.' * * *
 {¶ 76} `In some instances, offenders will have several sexually oriented convictions, or will clearly fit a variety of the factors listed in R.C. 2950.09(B)(2)(a) through (j). An offender who preys on children,for example, may fit the pedophile profile, a class of sex offendersknown for their especially high rate of recidivism.' (Emphasis added.)
 {¶ 77} "The sobering statistical evidence cited by the United States Congress and reviewed in Eppinger cannot be ignored. The high risk of recidivism with child sex offenders would tend to dispel any notion that they could be considered `normal' in a sense understood by the public."
 {¶ 78} The court reviewed the recidivism risk factors contained in R.C. 2950.09(B) and found a number of them to be applicable. It is also noteworthy that Hornack's own psychological expert concluded that the risk of sexual recidivism was "moderate to low." The use of "moderate" by Fabian has certain weight, which the court could rely on as clear and convincing evidence of a likeliness to reoffend, and serves to negate appellant's attempt to classify his risk of reoffending as a "minimal risk." See appellant's brief at 11. This term, "moderate," when used to modify the term "risk," implies a "fair" risk of reoffending, or "neither too much nor too little." See Webster's New Collegiate Dictionary (1960) 540. By using this term, the court could reasonably conclude that Hornack presented not an extreme risk on either of the far ends of the risk spectrum which would subsume a "minimal" risk, but some risk of reoffending, somewhere in between the opposite ends of the risk spectrum. This is sufficient to demonstrate by clear and convincing evidence that appellant is likely to sexually reoffend.
 {¶ 79} The original two assignments are overruled.
 {¶ 80} Subsequent to the filing of the original appellant's brief, appellant was granted leave to file a supplemental brief containing two additional assignments of error.
 {¶ 81} The first supplemental assignment states: "The Trial Court Erred in Sentencing Defendant to More than the Minimum Sentence of Imprisonment." Appellant's supplemental brief at 2. Appellant, a first-time offender, argues within this assignment that the trial court failed to make the necessary findings under R.C. 2929.14(B) which would permit deviating from the imposition of a minimum sentence.
 {¶ 82} R.C. 2929.14(B) states:
 {¶ 83} "(B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925 of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 84} With regard to making these findings, this appellate court has recently iterated the following:
 {¶ 85} "In State v. Edmonson (1999), 86 Ohio St.3d 324, 326,715 N.E.2d 131, the court considered R.C. 2929.14(B) and stated:
 {¶ 86} "`We construe this statute to mean that unless a court imposes the shortest term authorized on a felony offender who has never served a prison term, the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence.'
 {¶ 87} "The sentencing court need not use the exact language of the statute, as long as it is clear from the record that the court made the required findings. See State v. Hollander (2001), 144 Ohio App.3d 565;760 N.E.2d 929, citing State v. Futrell, 1999 Ohio App. LEXIS 5308 (Nov. 10, 1999) Cuyahoga App. Nos. 75033, 75034, 75035, unreported; State v.Assad, 1998 Ohio App. LEXIS 2598 (June 11, 1998) Cuyahoga App. No. 72648, unreported." State v. Williams, Cuyahoga App. No. 79273, 2002-Ohio-503.
 {¶ 88} In the present case, the record indicates that the trial court acknowledged that Hornack was a first-time offender and that the court should presume the imposition of a minimum sentence. Tr. 73. It then reviewed the seriousness factors contained in R.C. 2929.12 and, "[R]egarding those factors I find that the following apply to Mr. Hornack's conduct and indicate that that (sic) conduct is more serious than conduct normally constituting the offense.": (B)(1), that the injuries suffered by the victim were exacerbated by the age of the victim; (B)(2), that the victim suffered serious physical or psychological harm as a result of the offense; and, (B)(6), that the offender's relationship as a parent of the victim facilitated the offense. Tr. 73-75. The trial court then determined that none of the mitigation factors contained in R.C. 2929.12(C) applied. Tr. 75. The court recognized Hornack's personal achievements in education and the military but concluded that, while it might mitigate the sentence, it would "not take away from the serious nature of these acts," which, "are the worst form of these offenses, when a father perpetrates these acts against his own daughter." Tr. 76.
 {¶ 89} The sentencing journal entry also indicated that the court considered the necessary factors and concluded that the acts were the worst form of the offense(s). Although the trial court did not mirror the language of R.C. 2929.14(B), "that the shortest prison term would demean the seriousness of the offender's conduct," it is worth repeating that talismanic words are not necessary. State v. Williams, supra, 2002-Ohio-503. It is clear from the record herein that the trial court considered imposing the minimum sentence and then engaged in the analysis of the relevant factors so as to deviate from the minimum sentence, and also determined a minimum sentence to be demeaning to the serious nature of the offender's conduct.
 {¶ 90} The first supplemental assignment of error is overruled.
 {¶ 91} The second supplemental assignment of error states: "The Trial Court Erred in Sentencing Defendant to Consecutive Terms of Imprisonment." Appellant's supplemental brief at 2.
 {¶ 92} "R.C. 2929.14(E)(4) provides that the court may require an offender to serve multiple prison terms consecutively if the court finds that (1) the consecutive terms are necessary to protect the public from future crime or to punish the offender, and (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public, and (3) either that (a) the offense was committed while the offender was awaiting trial or sentencing or was under post release control, (b) the harm was so great or unusual that no single prison term would adequately reflect the seriousness of the offender's conduct, or (c) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime. R.C. 2929.19(B)(2)(c) requires the court to give its reasons for imposing consecutive sentences." State v. Fair (Oct. 17, 2002), Cuyahoga App. No. 80501, 2002-Ohio-5561, at ¶ 24.
 {¶ 93} The record in this case indicates that, while the court made an oral pronouncement at the sentencing hearing that the sentences on counts 1, 7, and 15 were to run consecutively to count 11, see Tr. 77, the sentencing journal entry of February 27, 2002, contains no mention of a consecutive sentence. Instead, all of the sentences were run concurrently in the February 27, 2002 sentencing entry, effectively imposing an eight-year sentence: "8 years as to count 1, count to run concurrent with counts 7 and 15; 3 years as to count 7, count to run concurrent with counts 1 and 15; 12 months as to count 11, count to run concurrent with counts 1, 7 and 15; 6 years as to count 15, count to run concurrent with counts 1 and 7."
 {¶ 94} It is axiomatic that a court speaks through its journal. The record does not demonstrate the claimed error.
 {¶ 95} The second supplemental assignment of error is overruled.
Judgment affirmed.
FRANK D. CELEBREZZE, Jr., J., CONCURS WITH SEPARATE CONCURRING OPINION.
DIANE KARPINSKI, J., CONCURS IN JUDGMENT ONLY WITH SEPARATE CONCURRING OPINION.
[1] An accelerated appeal is authorized pursuant to App.R. 11.1 and Loc.App.R. 11.1. The purpose of an accelerated docket is to allow an appellate court to render a brief and conclusory decision. Crawford v.Eastland Shopping Mall Assn. (1983), 11 Ohio App.3d 158; App.R. 11.1(E).
[2] Dr. Fabian's psychological report, see Defendant's Exhibit A, also indicates that Hornack was a member of the National Honor Society in high school.
[3] Fabian's report indicates that Hornack engaged in sexual acts of pedophilia with his daughter over a period of approximately five years when she was between the ages of 5 and 11. Fabian's report at 12.